Joe Yopp v. Commissioner.
Yopp v. Commissioner
Docket No. 25832.
United States Tax Court
1952 Tax Ct. Memo LEXIS 176; 11 T.C.M. (CCH) 615; T.C.M. (RIA) 52187; June 18, 1952
Ralph H. Schuette, Esq., Citizens Savings Bank Bldg., Paducah, Ky., and J. Walter Clements, Esq., for the petitioner. Michael J. Clare, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined the following income and victory tax deficiencies and penalties: Year
Deficiency
50% Penalty
1942
$ 894.21
$ 447.11
1943
2,115.49
1,057.75
1944
2,937.01
1,468.51
1945
2,604.22
1,302.11
The issues presented are: (1) Has petitioner filed false and fraudulent returns for the years 1942 through 1945 with intent to evade tax? (2) Has the period of limitations upon assessments and collections run so as to preclude the deficiency determinations? (3) Has *177 the respondent properly determined the deficiencies to be chargeable to the petitioner alone rather than to the family partnership composed of petitioner and his wife? (4) What is the adjusted basis of the real property identified as 728 South Third Street? Findings of Fact Some of the facts are stipulated and are so found. Petitioner is an individual residing in Paducah, Kentucky. He filed his income tax returns for the years before us with the collector of internal revenue for the district of Kentucky. The first return filed by petitioner was for the year 1940 and for the years 1940 and 1941 he filed returns indicating no tax liability. All returns were prepared by some one other than petitioner with information furnished by him. As a boy and as a young man petitioner worked in his father's grocery store. Shortly after he was married in 1927, he opened his own store in Paducah and has since then continued to operate it. Petitioner ceased his formal education after the completion of the seventh grade. Except for cancelled checks and cash register tapes, reflecting cash transactions, petitioner kept no books. He maintained a checking account in the name of Joe Yopp. This *178 account was primarily used for business purposes, but some of his personal expenses were commingled with his business expenses. His wife, who also worked with him in the grocery store, drew checks on this account. She drew checks by signing "Joe Yopp, by Mrs. Joe Yopp". Most of petitioner's business transactions were cash and carry, but a small portion of his sales were on a credit basis. Petitioner and his wife spent long hours in the store and regularly worked 4 or 5 hours on Sunday. The grocery store furnished petitioner with his principal source of income. A small additional income was also obtained from the rental of real property. The following table sets forth the gross receipts from sales: Year
Amount
1942
$42,205.82
1943
54,335.51
1944
60,988.92
1945
61,375.45
Petitioner was indicted on the charge of having filed false and fraudulent income tax returns for the calendar years 1942 through 1945. However, prior to the date set for trial, petitioner's doctors advised him that criminal proceedings would aggravate his long-standing high blood pressure and cause additional hypertension. They informed him that the strain from such a trial might cause his *179 death. An agreement was made with the United States District Attorney whereby the District Attorney would recommend a fine with no imprisonment, provided petitioner entered a plea of "nolo contendere". Petitioner entered the plea and the District Attorney made the recommendation. However, on April 22, 1949, the petitioner was "convicted upon his plea of nolo contendere" and ordered to pay a fine of $4,000 and to serve 30 days in jail. An additional jail sentence of a year and a day was suspended. Petitioner received real property known as 728 South Third Street as a gift from his mother. The property was held for more than six months. On May 31, 1944, he sold it for a consideration of $1,500; the expense of the sale amounted to $76.65. The petitioner's adjusted basis of the property was $1,000. This amount includes, in addition to the cost basis, a reasonable allowance for improvements and depreciation. The methods of accounting employed by the petitioner during the taxable years did not clearly reflect his income. The following table [1] sets forth petitioner's net worth and compares respondent's net worth net income with reported net income: Year ended
Net Income by
Net Income
December 31
Net Worth
Net Worth Method
as Reported
1941
$ 7,717
1942
11,894
$ 5,904
$ 1,379
1943
19,802
9,706
2,045
1944
29,686
12,398
2,620
1945
38,588
11,474
3,242 *
*180 The following table [1] shows the cash and government bond assets of petitioner for the years before us: 1941
1942
1943
1944
1945
Citizens Savings Bank
$ 2,425
$ 5,084
$12,958
$ 8,609
$ 5,605
Peoples National Bank
500
3,999
Cashier's Checks
5,000
5,000
U.S. Savings Bonds
777
927
10,927
19,427
No income tax returns were filed by petitioner's wife during the years involved, but she was claimed as a dependent on petitioner's individual returns. All or part of the deficiencies in petitioner's income tax for the years before us were attributable to fraud with intent to evade tax. Opinion Prior to the determination of a fraud penalty under section 293(b) a deficiency must first be shown, and then it must be shown that part of the deficiency was due to fraud. Respondent has determined that a deficiency existed for each of the years 1942 through 1945 and except for two alleged errors petitioner has not contested the deficiency determination. Since *181 the allegation of error applies only to the amount of the deficiency, we shall first discuss the fraud issue. The plea of nolo contendere entered by petitioner in the criminal proceeding involving the same years and the same issues can not be considered as disposing of the present case. Such a plea is a confession only for the purposes of the criminal prosecution and does not bind the petitioner in a civil action for the same wrong. . See also . Further, even if the plea of "guilty" were entered, followed with a conviction thereupon, these facts may not necessarily dispose of a court suit arising out of the same matter as disposed of in the criminal suit. "The record of a plea of guilty in a criminal case and the conviction thereon may be received in evidence in a civil suit arising out of the same matter. Such evidence is not conclusive in the civil proceedings, but is receivable as an admission to be given weight according to the circumstances." . However, when we consider the plea and the conviction on the plea *182 with the evidence here adduced, we find from the record as a whole that we must sustain the respondent in his determinations of the fraud penalty. There is no dispute about petitioner's net worth for the years before us. Logically then, this means that there can be no dispute about the increase of net worth from year to year. The petitioner's appreciation of net worth can not be attributed to such items as gifts, stocks or realty, but in fact it increased only as a result of income. Petitioner's net worth from December 31, 1941, to December 31, 1945, increased some $30,871. In the same period he reported an aggregate income of some $9,286, but during this time his holdings in cash and government bonds appreciated some $31,608. These figures indicate his net worth increased $21,585 more than he reported on his income tax returns. Petitioner's only explanation for his failure to report the full income was that he did not realize the store was making such money. It is incredible that an intelligent and successful business man should have been so grossly ignorant of his earnings. The failure to report true income does not in itself mean fraud, but when we find a pattern such as we *183 have here where petitioner has consistently failed to report income, then this in itself is evidence of a fraudulent intent to evade tax. See . On May 31, 1944, petitioner sold his property at 728 South Third Street, but he failed to report any gain or loss from this transaction. When asked to explain why this transaction was not reported on his tax return, he replied that he did not realize that he had made a profit on the sale. Omission of taxable transactions entirely from the return without adequate explanation evinces a fraudulent intent. . From the record on the whole we can only conclude that petitioner's course of conduct was intentional, deliberate and fraudulent and that his purpose was based on an intent to evade payment of tax. As to the second issue, petitioner contends, for all of the years before us, that the statute of limitations bars any additional assessment. In the absence of fraud petitioner's contention might prevail; however, the Code in section 276(a) provides "in the case of a false and fraudulent return with intent to evade tax * * * the tax may be assessed * * * *184 at any time". We have determined above that there has been fraud with intent to evade tax; therefore, the statute of limitations has not tolled against any additional assessments for the years before us. The third issue involves a family partnership question. Petitioner contends that the business was a partnership and therefore the income should be allocated half to his wife and half to himself. Respondent, on the other hand, alleges that the business was a sole proprietorship and that petitioner should be credited with the entire income derived from the operation of the store. Again the respondent must be sustained. We can not find sufficient evidence that a partnership existed or that it was the intent of the petitioner and his wife to operate as partners. No partnership return was filed for any of the years before us. In fact petitioner filed individual returns and claimed his wife as a dependent; this was not even a joint return. It appears from the evidence that petitioner alone was indicted for fraud. If the business had been operated as a partnership, probably petitioner and his wife would have shared the same fate in the criminal proceedings. It appears that petitioner *185 alone was concerned with that trial. Furthermore, there has been no showing that petitioner and his wife operated the business as partners; no showing that they held themselves out to the public as partners. In fact there was testimony that no one in Paducah knew that they were partners. The business name was the name of the petitioner alone. The bank account was in petitioner's name, but his wife was permitted to draw checks on the account by executing the checks as his agent. There has been no showing of a joint capital contribution; no evidence that the wife participated in the management of the business, or that she managed the profits derived therefrom. Finally, there is no evidence that a partnership agreement, written or parol, express or implied, was ever entered into between petitioner and his wife. The single fact which supports a partnership theory was Mrs. Yopp's contribution of services. Nevertheless, this alone does not establish the family partnership. There are many couples who consider their marriage as a venture in partnership living and accordingly treat their possessions and property as belonging to a common fund. This does not, however, make them partners in *186 a particular enterprise for business or tax purposes. For the fourth and final issue we must determine the basis for the real property identified as 728 South Third Street. From the record we have found the reasonable value of the improvements and have determined the adjusted basis for the property. This basis shall be used to determine the gain realized from the sale of the property. Decision will be entered under Rule 50. Footnotes
1. Cents omitted.↩
*. Respondent in his net worth statement in the deficiency notice indicated that the 1945 net income reported was $2,918.51. ↩
1. Cents omitted.↩